UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JILL ROCCATAGLIATA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| JO ANNE B. BARNHART, | § | SA-05-CA-0505 OG (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO:**   Hon. Orlando Garcia
       United States District Judge

**I. Introduction**

Plaintiff Jill Roccatagliata seeks review and reversal of the administrative denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") by the Administrative Law Judge ("ALJ") on October 29, 2004.[1] Plaintiff contends that ALJ Oscar G. Galvan's conclusion that plaintiff retained the residual functional capacity ("RFC") to perform work available in the local and national economies is not supported by substantial evidence of the record, and that the proper legal standards were not used to evaluate the evidence. For these reasons, plaintiff requests that the court reverse, remand, and order the entry of a finding of disability, or, in the alternative, remand the case for proper development.

After considering plaintiff's brief in support of her complaint,[2] defendant's brief in

---

[1] Docket Entry 1.  **See also** Administrative Transcript ("Transcript") at 12-20.

[2] Docket Entry 11.

support of the Commissioner's decision,[3] the transcript of the Social Security Administration ("SSA") proceedings, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, it is my recommendation that plaintiff's request for relief be **GRANTED**.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. Jurisdiction

The District Court has jurisdiction to review the final decision of the Commissioner of Social Security as provided by 42 U.S.C. §§ 405(g), 1383.

## III. Administrative Proceedings

Based on the record in this case, plaintiff fully exhausted her administrative remedies prior to filing this action in federal court. Plaintiff filed the instant application for DBI and SSI on January 23, 2002, alleging a disability beginning December 8, 2001.[4] The Commissioner initially denied the application on May 24, 2002,[5] and also denied her request for reconsideration

---

[3] Docket Entry 12.

[4] Transcript at 61-63.

[5] **Id.** at 26-30.

on July 31, 2002.[6]  On August 6, 2002, plaintiff timely requested a hearing before an ALJ,[7] and the hearing was held on November 6, 2003, in San Antonio, Texas.[8]  Ismael Chagolla, a non-attorney, represented plaintiff at the hearing.[9]  At the administrative hearing, ALJ Galvan heard testimony from plaintiff and the medical expert ("ME"), a board certified psychologist, Dr. James Lazarus.[10]

At the time of the hearing, the plaintiff was forty-two (42) years old and lived in San Antonio, TX.[11]  She was married, lived only with her husband, and had no children.[12]  Plaintiff told the ALJ that she had a twelfth-grade (12th) education.[13]

When asked about her ability to perform daily and routine activities, plaintiff testified that she could perform some household chores including cleaning and washing dishes.[14]  She testified that her husband usually did the grocery shopping, but that she occasionally accompanied him while he did the shopping.[15]  Plaintiff also told the ALJ that she knitted as a hobby, and could

---

[6] **Id.** at 33-36.

[7] **Id.** at 37, 260-61.

[8] **Id.** at 15, 260.

[9] **Id.**. at 21, 260.

[10] **Id.** at 15-20, 260-278.

[11] **Id.** at 261.

[12] **Id.** at 262.

[13] **Id.**

[14] **Id.**

[15] **Id.** at 263.

drive "every once in a while."[16]  Plaintiff testified that she spent most of the day lying down, trying to avoid or recover from migraine headaches.[17]

Plaintiff did not work at the time of the hearing.[18]  Plaintiff had most recently worked for three months as a catering assistant at the Dominion Country Club.[19]  As the catering assistant, she did all the typing for the catering department.[20]  Before that, she worked for three years as a systems analyst and data programer at Tri-County Retail Systems.[21]  Prior to working at Tri-County Retail Systems, plaintiff worked at Hyatt Hotels for six years in a clerical capacity.[22]  Before working at Hyatt Hotels, plaintiff worked at Sea World for six years, also in an office / clerical capacity.[23]

When the ALJ asked plaintiff why she could not presently work, she said that her migraines had progressed in frequency to where she would have migraines every day.[24]  Plaintiff said that the fluorescent lights and computer screens common to office/clerical workplaces aggravated her migraines, and the medication she took caused pronounced side-effects.[25]

---

[16] **Id.** at 262-3.

[17] **Id.** at 264-5.

[18] **Id.** at 266.

[19] **Id.** at 265.

[20] **Id.**

[21] **Id.** at 265-6.

[22] **Id.** at 266.

[23] **Id.**

[24] **Id.**

[25] **Id.** at 266-7.

When probed about her medical impairments, plaintiff testified that she had daily migraines, Meniere's Disease, vertigo, depression, and adverse reactions to regularly-taken medication.[26] Plaintiff testified that a cyst was removed from her brain in 1984, and that she was warned by her physician that after removing the cyst, she would be prone to headaches.[27] Plaintiff claimed to have suffered from migraines ever since the removal of her cyst.[28] She testified that she was terminated from her most recent employment at the Dominion because of absenteeism and poor work performance, both caused by her ailments.[29] Plaintiff claimed that her migraines were severe, negatively affected her balance, concentration, and vision, and were so severe that she sometimes went to the hospital emergency room or to her physician for shots of Demerol.[30] Florescent lights, loud noises, working on a computer, and even light housework like mopping or vacuuming would sometimes exacerbate the migraines.[31]

When asked about her impairments besides her migraines, plaintiff claimed that she was diagnosed with vertigo in 1989, that the cause of her vertigo was Meniere's Disease, and that the vertigo sometimes worsened her migraines.[32] Plaintiff also testified that she had been suffering from depression for two years,[33] and that her depression was caused by not working for two years

---

[26] **Id.** at 260-78.

[27] **Id.** at 268.

[28] **Id.**

[29] **Id.**

[30] **Id.** at 268-70.

[31] **Id.** at 271.

[32] **Id.** at 271-2.

[33] **Id.** at 272.

because of migraines.[34]  Plaintiff said that she lay in bed for 24 hours a few times per month due to her depression.[35]

ALJ Galvan heard testimony from ME Dr. James Lazarus.[36] Psychologist Dr. Lazarus evaluated plaintiff on April 25, 2002.[37] He diagnosed plaintiff with mild dysthymia, and described her psychological condition as "non-severe."[38] Dr. Lazarus did not evaluate her physical impairments, and suggested that a neurologist evaluate plaintiff's migraines.[39] According to the ME, plaintiff testified that her depression was related to her not being able to work,[40] but she reported to Dr. Harris that she had been depressed for her entire adult life.[41] The ME agreed with Dr. Harris' diagnosis of mild dysthymia,[42] which was more of a long-term underlying depression.[43] The ME testified that plaintiff's Global Assessment of Functioning ("GAF") was a 56 at the time of the evaluation, but was as high as 62 during the past year.[44] The ME testified that he had to elevate the severity of his diagnosis in light of plaintiff's testimony

---

[34] **Id.**

[35] **Id.** at 273.

[36] **Id.** at 274-6.

[37] **Id.** at 274-5.

[38] **Id.** at 275.

[39] **Id.**

[40] **Id.**

[41] **Id.** at 275-6.

[42] **Id.** at 276.

[43] **Id.**

[44] **Id.** at 276.

regarding her depression symptoms,[45] but that her depression still did not meet Listing Level 12.04.[46] Per the request of plaintiff's representative, the ALJ agreed to keep the record open until plaintiff's physical impairments could be evaluated by a physician.[47] Dr. Perkins evaluated plaintiff subsequent to the hearing on January 6, 2004.[48] A vocational expert ("VE") was not present at the hearing.[49]

On March 17, 2004, ALJ Galvan issued his decision in which he concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the date of the decision.[50] Specifically, ALJ Galvan found that plaintiff retained the RFC to perform light work available in the local and national economies.[51]

After receiving notice of the ALJ's unfavorable decision, plaintiff requested review of the hearing decision and order on May 17, 2004.[52] On April 1, 2005, the Appeals Council concluded that there was no basis upon which it could grant plaintiff's request for review, thereby denying

---

[45] **Id.**

[46] **Id.** In the third step of the Commissioner's evaluation of a claim, the Commissioner compares the severe impairment with those on a list of specific impairments. If it equals a listed impairment, the claimant is deemed disabled. An impairment that meets or equals a listed impairment is, in the vernacular of SSI and DBI claims, said to meet the "listing level." Listing Level 12.04 covers affective disorders: those disorders characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. **See** 20 C.F.R. § 404, Part 404, Subpart P, Appendix 1.

[47] Transcript at 276-7.

[48] **Id.** at 216-7.

[49] **Id.** at 15-20.

[50] **Id.** at 20.

[51] **Id.** at 19.

[52] **Id.** at 11.

plaintiff's request.[53]  Plaintiff commenced the present action in this court on May 27, 2005.[54]

## IV. Issues Presented

Is the ALJ's decision supported by substantial evidence and does it comport with relevant legal standards?

## V. Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability insurance benefits, the reviewing court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[55]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[56] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[57]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[58]  In reviewing the Commissioner's findings, a court must

---

[53] **Id.** at 5-8.

[54] Docket Entry 1.

[55] **Martinez v. Chater**, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[56] **Villa v. Sullivan**, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting **Hames v. Heckler**, 707 F.2d 162, 164 (5th Cir. 1983)).

[57] **Abshire v. Bowen,** 848 F.2d 638, 640 (5th Cir. 1988) (quoting **Hames**, 707 F.2d at 164).

[58] **Martinez**, 64 F.3d at 173.

carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[59] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[60] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[61]

**1. Entitlement to Benefits**

Every individual who is insured for disability insurance benefits, has not reached retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[62] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[63] A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age, education, and work experience, participate in any other kind of substantial gainful work which

---

[59] **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995); **see also** **Villa**, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[60] **Martinez**, 64 F.3d at 174.

[61] **Id.**

[62] 42 U.S.C. § 423(a)(1).

[63] 42 U.S.C. § 1382c(a)(3)(A).

exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.[64]

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[65] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[66]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[67] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[68] The second step involves determining whether the claimant's impairment is severe.[69] If it is not severe, the claimant is deemed not disabled.[70] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[71] If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[72] If the

---

[64] 42 U.S.C. § 1382c(a)(3)(B).

[65] 20 C.F.R. §§ 404.1520, 416.920.

[66] <u>Leggett v. Chater</u>, 67 F.3d 558, 564 (5th Cir. 1995).

[67] 20 C.F.R. §§ 404.1520, 416.920.

[68] <u>Id.</u>

[69] <u>Id.</u>

[70] <u>Id.</u>

[71] 20 C.F.R. §§ 404.1520, 416.920.

[72] <u>Id.</u>

impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his or her past work.[73] If the claimant is still able to do his or her past work, the claimant is not disabled.[74] If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[75] If the claimant cannot do other work, he or she will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[76] Once the claimant has shown that he or she is unable to perform his or her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and non-exertional limitations, able to maintain for a significant period of time.[77] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he or she is unable to perform the alternative work.[78]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process. At step one, the ALJ found that plaintiff did not engage in substantial gainful employment in 2002.[79]

---

[73] **Id.**

[74] **Id.**

[75] **Id.**

[76] **Leggett,** 67 F.3d at 564.

[77] **Watson v. Barnhart**, 288 F.3d 212, 217 (5th Cir. 2002).

[78] **Anderson v. Sullivan**, 887 F.2d 630, 632-33 (5th Cir. 1989).

[79] Transcript at 16.

ALJ Galvan then concluded at steps two and three that plaintiff had an impairment or combination of impairments (migraine headaches and mild dysthymia) that were severe,[80] but did not meet or medically equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4.[81] At step four, the ALJ found that plaintiff could not perform her past relevant work because of headaches.[82] At step five, ALJ Galvan determined that plaintiff retained the residual functional capacity to perform light work.[83] Further, ALJ Galvan held that given plaintiff's age (defined as a younger individual),[84] education (high school education),[85] and vocational experience (no transferable skills from previous work or transferability inapplicable to this case),[86] plaintiff could perform light work (lifting ten pounds frequently and twenty pounds maximum, prolonged standing, and some pushing and pulling).[87] Based on the foregoing, ALJ Galvan concluded that plaintiff was not under a disability.[88]

**C. Plaintiff's Allegations of Error**

Plaintiff claims that the ALJ erred in determining that plaintiff was not under a disability as defined by the Act, that the determination is not supported by substantial evidence, and that

---

[80] **Id.**

[81] **Id. See also** 20 C.F.R. § 404, Part 404, Subpart P, Appendix 1 (containing the list of impairments).

[82] Transcript at 16.

[83] **Id.** at 19.

[84] **Id.**

[85] **Id.**

[86] **Id.**

[87] **Id.**

[88] **Id.** at 18-20.

proper legal standards were not used in making the determination. In particular, plaintiff contends that the ALJ improperly failed to have a VE at the hearing, and instead relied on the Grid Rules[89] ("Grid") to make his determination, when the plaintiff had severe non-exertional limitations that affected her RFC, thereby rendering the ALJ's determination lacking the substantial evidence required by law. Plaintiff also argues that the ALJ failed to use proper legal standards in making his determination because he failed to apply the Fifth Circuit standard for determining whether plaintiff could perform and hold a job.

### 1. Vocational Expert Testimony and the Grid Rules

Plaintiff contends that her severe non-exertional impairments – migraines, Meniere's Disease, pain, and dysthymia – affects her RFC . She argues that the ALJ failed to obtain the testimony of a VE at step five and instead relied solely on the Grid to make his determination. Defendant claims that plaintiff had severe non-exertional impairments, but that those impairments did not significantly affect her RFC; and accordingly, ALJ Galvan's use of the Rules instead of the testimony of a VE was proper.

The Fifth Circuit has created a standard for determining if an ALJ may rely solely on the Rules and not be required to obtain the testimony of a VE at step five.

> [U]se of the grid rules is only appropriate "when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity."[90]

In the instant case, the ALJ used the Rules and did not obtain the testimony of a VE to

---

[89] **See** 20 C.F.R. § 404, Part 404, Subpart P, Appendix 2 (containing the grid comparing claimant's age, education, and experience and resulting in a mechanical determination of disability status).

[90] **Watson v. Barnhart**, 288 F.3d 212, 216 (5th Cir. 2002) (quoting **Crowley v. Apfel**, 197 F.3d 194, 199 (5th Cir. 1999)). **See also Loza v. Apfel**, 219 F.3d 378, 398 (5th Cir. 2000) (quoting **Crowley**, 197 F.3d at 199).

determine the claimant's disability status.  Therefore, to comport with the Fifth Circuit precedent, given that plaintiff has severe non-exertional limitations,[91] ALJ Galvan must have found, based on substantial evidence and through proper legal standards, that plaintiff's non-exertional impairments did not significantly affect her RFC.

**a. Non-Exertional Impairments and RFC**

ALJ Galvan found that Plaintiff had severe non-exertional impairments of migraine headaches and mild dysthymia.[92]  The ALJ also found that those impairments did not meet or equal one of the listed impairments found in Appendix 1, Subpart P, Regulation No. 4.[93]  Use of the Grid is only appropriate when the non-exertional impairments do not significantly affect the claimant's RFC.  ALJ Galvan was required to make such a finding.

In his decision, the ALJ considered the medical testimony of plaintiff's treating physician, Dr. Harris, regarding plaintiff's dysthymia.[94]  Dr. Harris diagnosed:

> [Plaintiff] has mild restrictions of activities of daily living, mild to
> no difficulties in maintaining social functioning and has mild
> deficiencies of concentration, persistence, or pace resulting in
> failure to complete tasks in a timely manner.[95]

ALJ Galvan agreed with Dr. Harris's diagnosis that the mild dysthymia is moderate, but failed to explicitly address what impact this non-exertional impairment has on plaintiff's RFC.

Additionally, regarding plaintiff's migraines, ALJ Galvan agreed with the diagnosis of

---

[91] Transcript at 19.

[92] **Id.**

[93] **Id.**

[94] **Id.** at 17.

[95] **Id.**

14

Dr. Perkins, the consultative physician, who observed:

> There is no objectively demonstrated physical basis for limitations in sitting, standing, moving about, lifting, carrying, handling objects and speaking.[96]

While the ALJ's acceptance of the consultative physician's opinion may constitute the ALJ's attempt to characterize plaintiff's non-exertional impairment of migraines as not significantly affecting her RFC, it does not supply an explicit analysis concluding that her migraines did not significantly affect her RFC. No such analysis is present in ALJ Galvan's decision.

ALJ Galvan addressed plaintiff's claims of Meniere's Disease, an impairment listed in 20 C.F.R. § 404, Part 404, Subpart P, Appendix 1, in one sentence.[97] The ALJ does not address why this impairment does not meet the listing level, or why this non-exertional impairment does not significantly affect her RFC. The ALJ simply states that the impairment has been resistant to treatment.[98]

### b. Rejecting Treating-Physician Testimony

There is also no analysis of the diagnosis and records of plaintiff's treating physician, Dr. Kruczek.[99] Instead, the ALJ relied solely on the testimony of a consultative physician, Dr. Perkins. Dr. Kruczek diagnosed plaintiff with an ophthalmic migraine that was refractory to treatment. He performed many invasive and painful procedures over a period of time designed to

---

[96] **Id.**

[97] **Id.**

[98] **Id.**

[99] **Id.** at 221-54.

control plaintiff's migraines.[100] Dr. Kruczek reported that plaintiff still had significant headache pain.[101] Dr. Perkins' evaluation only mentions that pain in general is subjective, and that there was no objectively demonstrated physical basis for plaintiff's limitations in sitting, standing, moving about, lifting, carrying, handling objects and speaking.[102]

The Fifth Circuit has created a general rule regarding what weight is to be given the evidence garnered from a claimant's treating physician.

> Ordinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability.[103]

"The treating physician's opinions, however, are far from conclusive,"[104] and the "ALJ has the sole responsibility for determining the claimant's disability status."[105] Thus, an ALJ may reject the findings of a treating physician, but the ALJ must first conduct a proper analysis.

> Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.[106]

---

[100] **Id.**

[101] **Id.** at 252-253 (summarizing the history of procedures, medications and plaintiff's response to these treatments).

[102] **Id.** at 216-7.

[103] **Greenspan v. Shalala**, 38 F.3d 232, 237 (5th Cir. 1994) (quoting **Scott v. Heckler**, 770 F.2d 482, 485 (5th Cir.1985)).

[104] **Id.**

[105] **Id.** (quoting **Moore v. Sullivan**, 919 F.2d 901, 905 (5th Cir.1990)).

[106] **Id.** (quoting **Scott**, 770 F.2d at 485).

16

Accordingly, ALJ Galvan had the authority to determine the weight to give Dr. Kruczek's opinion. However, he was obligated to discuss the treating physician's opinion and explain the basis for his determination. No such explanation was provided by the ALJ.

### c. Incorrect Use of Grid Rules and Conclusion

A disability determination incorrectly based on the Grid and not on the testimony of a VE is reversible by the district courts.

> When use of the grid rules is inappropriate and the testimony of the VE is warranted, a decision that a claimant can perform a job, in the absence of a VE's testimony, lacks the substantial evidence required by law.[107]

The ALJ found that plaintiff had severe non-exertional impairments. The testimony of a VE was required, and use of the Rules improper, unless the non-exertional impairments did not significantly affect the plaintiff's RFC. ALJ Galvan did not determine that plaintiff's RFC was not significantly affected by her non-exertional impairments, and ignored evidence from plaintiff's treating physician that indicated her migraines were severe without proper analysis of why the evidence should be ignored. Thus, reliance on the Grid was improper, and the decision was not based on substantial evidence. Accordingly, plaintiff's request for relief should be granted.

### 2. Claimant's Ability to Maintain Employment

Plaintiff argues that ALJ Galvan should have determined not only if she could perform a job, but whether she could hold the job as well. Defendant claims that no such inquiry was required.

---

[107] **Wingo v. Bowen**, 852 F.2d 827, 831 n.4 (5th Cir. 1988).

The Fifth Circuit has established guidelines for determining whether a claimant is able to engage in substantial gainful employment.

> A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.[108]

The Fifth Circuit has held that the rule applies to both mental and physical disability cases.[109] However, "nothing in **Watson** suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case."[110]

> Watson requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination.[111]

In the instant case, plaintiff's chief complaint is severe pain caused by chronic migraines. The timing of the migraines is unpredictable; however, they reoccur, sometimes as often as each day. This condition, by its nature, waxes and wanes in its manifestations of disabling symptoms. Thus, a claimant may have the RFC to perform a certain type of work, but not be able to hold that job because of the periodic episodes of crippling pain.

In the instant case, ALJ Galvan reached step five of the disability analysis. He concluded that plaintiff possessed a sufficient RFC to perform a range of light work, and that plaintiff

---

[108] **Singletary v. Bowen**, 798 F.2d 818, 822 (5th Cir. 1986).

[109] **Watson v. Barnhart**, 288 F.3d 212, 218 (5th Cir. 2002).

[110] **Frank v Barnhart**, 326 F.3d 618, 619 (5th Cir 2003).

[111] **Id.**

suffered from migraine headaches.  However, the medical evidence indicates that the migraines are periodic.[112]  Therefore, this type of impairment waxes and wanes in its manifestations of disabling symptoms and requires a **Singletary** analysis.  ALJ Galvan's analysis failed to incorporate a finding of whether plaintiff could maintain, as well as perform, a job for a significant period of time.  Because the ALJ failed to analyze whether plaintiff could maintain a job for a significant period of time, the ALJ's determination does not comport with proper legal standards.

## VI.  Recommendation

Based on the foregoing, I recommend that plaintiff's request for relief (Docket Entry 1) be **GRANTED**, the decision of the Commissioner **REVERSED**, all other motions be **DENIED** as moot,  and this action **REMANDED** for further proceedings consistent with this Memorandum and Recommendation.  On remand, the defendant should make a finding of whether plaintiff's non-exertional impairments significantly affect her RFC, analyze why the testimony of a consultative physician should be given weight over that of a treating physician, and further develop the analysis of plaintiff's Meniere's Disease in accordance with this memorandum.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those

---

[112] Transcript at 221-54.

not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[113]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[114]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the +unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[115]

   **SIGNED** on August 7, 2006.

                                   _____
                                   NANCY STEIN NOWAK
                                   UNITED STATES MAGISTRATE JUDGE

---

[113] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[114] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

[115] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).